IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSEPH GUAMAN, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Action No. 2:21-cv-1121 ) ) |
| JOHN WETZEL, et al., | ) ) |
| Defendants. | ) ) |

**MEMORANDUM**[1]

For the reasons that follow, the Court will grant Defendants' Motion for Summary Judgment (ECF 51) as to all federal claims asserted against them, enter judgment in their favor and against Plaintiff on all federal claims, and dismiss Plaintiff's remaining state law claims without prejudice to bring in state court.

**I.      Relevant Procedural History**

Plaintiff Joseph Guaman, who is proceeding *pro se*, commenced this civil rights action under 42 U.S.C. § 1983 in August 2021. He is a state prisoner in the custody of the Pennsylvania Department of Corrections ("DOC") who is housed at SCI Mercer. Plaintiff filed an Amended Complaint (ECF 16) in October 2021. He brings Eighth and Fourteenth Amendment claims and state-law claims of "gross negligence" and "emotional distress" against John Wetzel, the former Secretary of the DOC; Karen Feathers, the Chief Health Care Administrator at SCI Mercer; and Corrections Officer Adam Magoon (collectively, "Defendants"). All of Plaintiff's claims are

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case. Thus, the undersigned has the authority to decide dispositive motions and enter final judgment.

1

premised on the manner in which Defendants allegedly mishandled the COVID-19 pandemic at SCI Mercer from around April 2020 to around October 2021.

After discovery, Defendants filed the pending motion for summary judgment (ECF 51), which is supported by a brief (ECF 52), a concise statement of material facts (ECF 54) and an appendix (ECF 53.) They contend that they are entitled to judgment in their favor because Plaintiff failed to exhaust his available administrate remedies.

The Court ordered Plaintiff to respond to Defendants' motion by July 25, 2022. (ECF 55.) He failed to respond, request more time to do so or otherwise communicate with the Court. The Court then issued another order directing Plaintiff to respond no later than August 18, 2022. Plaintiff was also advised that if he did not file a response the Court would proceed to decide Defendants' summary judgment motion on the merits without his response. (ECF 56.) Plaintiff once again failed to comply with the Court's order, request an extension or communicate with the Court in any manner.[2] (ECF 18.)

Thus, Plaintiff has submitted no opposition to Defendants' motion for summary judgment or disputed their concise statement of facts as required by Local Rule 56.C.1. As a consequence, and in accordance with the applicable procedural rules, this Court has treated the facts as stated in Defendants' concise statement of material facts as undisputed for the purpose of resolving Defendants' motion.

II.     **Relevant Factual Background**

Plaintiff was issued an inmate handbook when he first entered the DOC custody in 2019. (ECF 54 ¶ 1.) The handbook explains the inmate grievance system that is relevant to this case,

---

[2] In fact, Plaintiff has not communicated with the Court in any way since October 2021. There is nothing to suggest that he is not receiving mail that the Court has sent to him. Thus, it appears to the Court that Plaintiff has abandoned prosecution of this case. However, because Defendants have demonstrated that they are entitled to judgment in their favor on Plaintiff's federal claims because he procedurally defaulted those claims, the Court will dismiss those claims for that reason.

which is set forth in DC-ADM 804.

Plaintiff admitted during his April 4, 2022 deposition that he did not review the inmate handbook when he entered DOC custody. He also admitted that he did not file a grievance related to any of the claims he brought in the Amended Complaint. Plaintiff conceded that the grievance process was available to him and that if had wanted to file a grievance regarding the conditions of his confinement at SCI Mercer he would have been able to do so. (ECF 53 ¶¶ 3-5; Def's Ex. 1, ECF 53-1 at p. 5-6.)

### III. Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides that: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of showing the absence of a genuine, material dispute and an entitlement to judgment. *Id.* at 323. This showing does not necessarily require the moving party to disprove the opponent's claims. Instead, this burden may often be discharged simply by pointing out for the court an absence of evidence in support of the non-moving party's claims. *Id.*; *see, e.g.*, *Spierer v. Rossman*, 798 F.3d 502, 508 (7th Cir. 2015).

Once the moving party has met its initial burden, then the burden shifts to the non-moving party to demonstrate, by affidavit or other evidence, "specific facts showing that there is a genuine issue for trial" or the factual record will be taken as presented by the moving party and judgment

will be entered as a matter of law. *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A non-moving party must "go beyond the pleadings" and show probative evidence creating a triable controversy. *Celotex*, 477 U.S. at 324. An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In following this directive, a court must take the facts in the light most favorable to the non-moving party and must draw all reasonable inferences and resolve all doubts in that party's favor. *Hugh v. Butler Cnty Family YMCA*, 418 F.3d 265,266 (3d Cir. 2005); *Doe v. Cnty of Ctr., Pa.*, 242 F.3d 437, 446 (3d Cir. 2001).

Although courts must hold *pro se* pleadings to "less stringent standards than formal pleadings drafted by lawyers," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), at the summary judgment stage a *pro se* plaintiff is not exempt from his burden of providing some affirmative evidence, not just mere allegations, to show that there is a genuine dispute for trial. *See, e.g.*, *Barnett v. NJ Transit Corp.*, 573 F. App'x 239, 243 (3d Cir. 2014) (holding that the *pro se* plaintiff was still "required to designate specific facts by use of affidavits, depositions, admissions, or answers to interrogatories…sufficient to convince a reasonable fact finder to find all the elements of her prima facie case") (citation and quotation omitted); *Siluk v. Beard*, 395 F. App'x 817, 820 (3d Cir. 2010) ("[T]he right of self-representation does not exempt a party from compliance with relevant rules of procedural law.").

IV.     Discussion

    A.     <u>Plaintiff Failed to Exhaust His Eighth and Fourteenth Amendment Claims</u>

The Prison Litigation Reform Act ("PLRA") mandates that an inmate exhaust "such administrative remedies as are available" before bringing a suit challenging prison conditions. 42 U.S.C. § 1997e(a). The exhaustion requirement "applies to all inmate suits about prison life,

whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Exhaustion is a "non-jurisdictional prerequisite to an inmate bringing suit" and when raised by a defendant it constitutes a threshold issue to be addressed by the court. *See, e.g.*, *Rinaldi v. United States*, 904 F.3d 257, 265 (3d Cir. 2018).

The Supreme Court has repeatedly observed that the PLRA's exhaustion requirement "is 'mandatory': An inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies." *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016) (citing *Woodford v. Ngo*, 548 U.S. 81, 85 (2006) and *Jones v. Bock*, 549 U.S. 199, 211 (2007)). Exhaustion is mandatory under the PLRA regardless of the type of relief sought and the type of relief available through administrative procedures. *Booth v. Churner*, 532 U.S. 731, 741 (2001). Courts are not given discretion to decide whether exhaustion should be excused, *Ross*, 136 S. Ct. at 1858, and there is no exception to the exhaustion requirement based on "futility." *Ahmed v. Dragovich*, 297 F.3d 201, 206 (3d Cir. 2002) (citations omitted).

The PLRA's mandatory exhaustion requirement means not only that a complaint filed before administrative remedies are exhausted is premature and cannot be entertained, it also means that failure to exhaust administrative remedies in accordance with a prison's grievance procedures constitutes procedural default. *Woodford*, 548 U.S. at 93-95; *see also Spruill v. Gillis*, 372 F.3d 218, 227-30 (3d Cir. 2004). That is because "the PLRA's exhaustion requirement requires proper exhaustion." *Woodford*, 548 U.S. at 93; *Spruill*, 372 F.3d. at 227-30.

The prison's grievance policy is what "define[s] the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218; *Spruill*, 372 F.3d at 230-31 (the "prison grievance procedures supply the

5

yardstick for measuring procedural default."). Therefore, the procedural requirements for exhaustion in a given case "are drawn from the polices of the prison in question rather than from any free-standing federal law." *Shifflett v. Korszniak,* 934 F.3d 356, 364 (3d Cir. 2019) (citing *Spruill*, 372 F.3d at 231).

The Court of Appeals has explained that if the defendant demonstrates that the inmate failed to exhaust his administrative remedies, then "the inmate plaintiff bears the onus of producing evidence that the on-the-books remedies were in fact unavailable to him or her." *West v. Emig*, 787 F. App'x 812, 814 (3d Cir. 2019) (citing *Rinaldi*, 904 F.3d at 268).

The DOC's official Inmate Grievance System is set forth in DC-ADM 804. It "is intended to deal with a wide range of issues, procedures, or events that may be of concern to an inmate[,]" including challenges or complaints about prison policies. DC-ADM 804, § 1.A.2; *see also id.* at p. 13, DC-ADM 804 § 1.A.13 ("[a]n inmate who has been personally affected by a Department and/or facility action or policy will be permitted to submit a grievance.").

DC-ADM 804 sets forth a three-tier administrative remedy system. A prisoner is required to present his grievance to the Facility Grievance Coordinator for initial review. *Id.*, § 1.A.5. The prisoner is required to appeal an adverse determination by the Facility Grievance Coordinator to the Facility Manager. *Id.*, § 2.A. From there the prisoner must appeal to the DOC's Secretary's Office of Inmate Grievances and Appeals for appeal to final review. *Id.*, § 2.B.

It is undisputed that Plaintiff did not file a grievance related to any of the claims he brought in the Amended Complaint. Thus, Defendants have satisfied their burden of demonstrating that Plaintiff failed to resort to the available remedies. Therefore, the burden shifts to Plaintiff to demonstrate that the administrative remedies were in fact unavailable to him.

The Supreme Court explained in *Ross* that the term "available" means "capable of use" to obtain "some relief for the action complained of." 136 S. Ct. at 1859 (quoting *Booth,* 532 U.S. at 738).

> [It] identified "three kinds of circumstances in which an administrative remedy, although officially on the books," is not "available" because it is "not capable of use to obtain relief": (1) when "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) when it is "so opaque that it becomes, practically speaking, incapable of use," such as when no ordinary prisoner can discern or navigate it; or (3) when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."

*Rinaldi*, 904 F.3d at 266-67 (quoting *Ross*, 135 S. Ct. at 1859-60). *See also Hardy v. Shaikh*, 959 F.3d 578, 584 (3d Cir. 2020) (misleading or deceptive instructions from a prison official, as well as clearly erroneous statements, can render a grievance process unavailable). The Court of Appeals has further held "that as soon as a prison fails to respond to a properly submitted grievance or appeal within the time limits prescribed by its own policies, it has made its administrative remedies unavailable and the prisoner has fully discharged the PLRA's exhaustion requirement" but only as to the matters complained of and the relief sought in the grievance. *Shifflett*, 934 F.3d at 365. Absent a situation where administrative remedies are not "available," a court may not excuse an inmate's failure to exhaust "irrespective of any 'special circumstances.'" *Ross*, 136 S. Ct. at 1856.

Plaintiff has not satisfied his burden of proving that any of the above-cited circumstances were present and made administrative remedies unavailable for his claims. As explained above, he filed no response opposing Defendants' summary judgment motion. Accordingly, Defendants are entitled to judgment in their favor on Plaintiff's federal claims because he procedurally defaulted the Eighth and Fourteenth Amendment claims he brought against them in this lawsuit.

B. <u>Plaintiff's State Law Claims</u>

Where, as is the case here, all claims over which the Court has original jurisdiction have been dismissed, the district court may decline to exercise supplemental jurisdiction over remaining state law claims. 28 U.S.C. § 1367(c)(3). Although declining to exercise jurisdiction is within the discretion of the district court, the Court of Appeals has held that, absent extraordinary circumstances, pendent jurisdiction should be declined where the federal claims are no longer viable. *Shaffer v. Bd. of Sch. Dir. Albert Gallatin Area Sch. Dist.*, 730 F.2d 910, 912 (3d Cir. 1984) (citations omitted).

In this case, Plaintiff's federal claims are no longer viable and no extraordinary circumstances warrant the exercise of supplemental jurisdiction over Plaintiff's state law claims. Accordingly, the Court will dismiss Plaintiff's state law claims without prejudice. *See, e.g., Spencer v. Bush*, 543 F. App'x 209, 213 (3d Cir. 2013) (declining to decide whether state law claims must be exhausted under the PLRA and holding that the district court should have declined to exercise supplemental jurisdiction over those claims); *Camacho v. Beers*, No. 16-cv-1644, 2018 WL 6618410, at *3 (W.D. Pa. Dec. 18, 2018) (granting judgment in the defendants' favor on the federal claims for failure to exhaust administrative remedies and declining to exercise supplemental jurisdiction over plaintiff's state law claims).

**V.  Conclusion**

Based on the above, the Court will grant Defendants' Motion for Summary Judgment (ECF 51) as to the Eighth and Fourteenth Amendment claims asserted against them, enter judgment in their favor and against Plaintiff on these federal claims, and dismiss Plaintiff's remaining state law claims without prejudice to bring in state court.

8

An appropriate order follows.

BY THE COURT:

/s/ Patricia L Dodge
United States Magistrate Judge

Dated: December 22, 2022